## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHARLES DEPAUL CARTER,

        Plaintiff,

    v.                                   CV 09-0573 BB/GBW

E. BRAVO, Warden, JESSICA
(VIGIL) ROGERS, Grievance
Officer, Guadalupe County
Correctional Facility.

        Defendants.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before the Court on Defendants' *Martinez* Report filed January 7, 2010, (*Doc. 14*) which Defendants requested that the Court construe as a motion for summary judgment. Plaintiff Charles Carter filed his response on February 11, 2010 *(Doc. 15*), and Defendants replied on February 25, 2010 (*Doc. 16*). The Report will be construed as a motion for summary judgment. This case was referred to me on June 10, 2009, to submit proposed findings of fact and recommendation for the disposition of the case pursuant to 28 U.S.C. §636(b)(1). *Doc. 4.* Having considered the pleadings and the relevant law, the Court recommends that Mr. Carter's Complaint be dismissed on the merits.

## BACKGROUND

Mr. Carter, a former prisoner[1] who is proceeding *pro se* and *in forma pauperis*, filed this civil rights action brought under 42 U.S.C. § 1983 on June 5, 2009. *Doc. 1.* Plaintiff asserts that he was denied adequate dental care, and that Defendants Bravo and Vigil[2] showed deliberate indifference in denying or ignoring his grievances and failing to provide Plaintiff's recommended surgery. *Id.* Mr. Carter alleges a violation of his Fourteenth Amendment Constitutional Due Process rights and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* Mr. Carter is seeking compensatory damages in the amount of $39,000 and punitive damages in the amount of $300,000.00 against each Defendant. *Id.*

On January 5, 2009, Mr. Carter submitted a health service request to have two teeth pulled. *Doc. 14*, Exh. G. On January 10, a nurse evaluated him and noted that he had two teeth which were in "serious decay" and referred him to the on-site dentist. *Id.* A review of the medical records show that the two teeth at issue were #5 and #15. *Id.* On February

---

[1] Mr. Carter was incarcerated at Guadalupe County Correctional Facility ("GCCF"), where the alleged incidents took place, when he initiated this suit on June 5, 2009. *Doc. 1.* However, the record suggests that on July 14th, 2009 Mr. Carter was released and now resides in Albuquerque. *See Doc. 14*, Exhs. A & C; *Doc. 16* at 7.

[2] Mr. Carter's complaint originally also named the prison dentist, J. Romine, DDS, as a defendant. Dr. Romine, however, was dismissed *sua sponte* by Judge Black on September 21, 2009. *See Doc. 10.* Defendant (Vigil) Rogers was added by that same order. *Id.*

17, Dr. J. Romine, the onsite dentist, examined Plaintiff.  *Id.*  Plaintiff claims that, at that appointment, Dr. Romine told Plaintiff that he could not remove his teeth at the prison due to their severe condition, and that he would schedule an off-site surgery.  *Doc. 1.* at 4.[3]  Dr. Romine's Dental Progress Notes state that there was a "limited exam" on February 17th, and that "nothing hurts."  *Doc. 14*, Exh. G.  Dr. Romine's notes on this exam include the following notation: "extract 5 surg?"  This notation supports the conclusion that Dr. Romine was considering extraction surgery of Mr. Carter's #5 tooth but not his #15 tooth. *Id.*  The notes do not reflect whether this surgery, if necessary, would be performed on or off-site.  *Id.*

On or about February 23rd, Mr. Carter filed a second health service request stating that: "Lowet [sic] tooth filling hurting causing severe pain."  *Id.*  In response to his request, on February 27, a nurse evaluated Plaintiff and prescribed him pain medication, and again "referred [him] to dental."  *Id.*  The Dental Progress Notes do not show any examination by a dentist following this second nurse referral.

On May 7, 2009, Plaintiff filed an informal grievance saying:

On 2-17-09 I was seen by the Dentist who had to schedule an off-site surgery. It's been almost 3 months later and my teeth have gotten worse. I know I can't be informed on security issues but this is causing infection to spread and the pain has only gotten worse. I thought it would've been taken care of

---

[3]  For ease of reference, I refer to the complaint by the page number of the PDF version of the document.

by now so I haven't complained.

*Id.*, Exh. C.

Plaintiff claims that he filed a third request for health services in early May as well.[4]

Plaintiff charges that this third request was "removed from his file during the grievance

procedure." *Doc. 15* at 6.[5]  Without explaining the foundation for this allegation, Plaintiff

then claims that Defendant Vigil "personally went to the medical office[,] removed the

Plaintiffs [sic] request and instructed the administrator to reschedule the Plaintiff for

another date, which wouldn't take place for another 10 days." *Id.*  This allegation against

Defendant Vigil, which is found in his Response to the *Martinez* Report, is contrary to Mr.

Carter's claims in his Complaint.  In his Complaint, Mr. Carter alleged that that *the medical*

*department* "either lost, chose not to place, or removed certain medical request from the

Plaintiff which showed the extent of his pain." *Doc. 1* at 4.  He conceded that "he was seen

---

[4]  Plaintiff alleges that "[o]n 5-0-08 the Plaintiff filed another medical request explaining his pain." *Doc. 15* at 6.  The Court is unsure what is meant by "5-0-08." Throughout the Response, Plaintiff frequently dates events as "08" when it is clear from the *Martinez* Report (and, indeed, the Complaint) that all relevant events took place in 2009. For the purposes of this Report and Recommendation, I have assumed the numerous references to "08" are typos and should have referred to "09."  It is still not clear, however, what date would be meant by "5-0-09."

[5]  For ease of reference, I refer to Plaintiff's Response by the page number of the PDF version of the document.  As far as the Court can decipher, page eleven should have been, but was not, placed between pages five and six.  Although the varied font and erratic spacing make it difficult to check for further ordering errors, the Response otherwise appears to read in the order presented in the PDF version.

for that request but there is no record of his request in his medical record." *Id.* The supposed third request for health services does not appear in the documentation included in Defendants' *Martinez* report. However, for the purposes of my Recommendations, I will presume that such a request was made. *See infra* p. 5, n. 7.

While not mentioned in his Complaint, Mr. Carter claims in his Response that, sometime after he made his third medical request, he "wrote directly to warden E. Bravo requesting that something be done so that I may received my prescribed dental surgery." *Doc. 15*, Exh. B.[6]

On May 15, 2009, the first informal complaint form was returned to Plaintiff classified as "resolved" by Defendant Vigil, the Grievance Officer in Mr. Carter's case. Defendant Vigil concluded that the grievance was resolved because the Plaintiff was scheduled to be examined by the on-site dentist on May 18th or 19th to determine if off-site surgery was necessary.[7] *Id.*, Exh. C, F. That same day, Mr. Carter signed the returned

---

[6] This affidavit is actually unmarked but comes after Mr. Carter's letter labeled "Exhibit A" and before his informal complaint labeled "Exhibit C."

[7] It is unclear whether the Plaintiff, perhaps unbeknownst to him, was already scheduled for the May 18, 2009 appointment at the time he filed his first grievance, or whether that appointment was scheduled *because* of his grievance. When his first informal grievance was marked "resolved," staff member Armijo included the note: "Mr. Carter is currently scheduled to see the on-site dentist either on 5-18 or 5-19 to evaluate need for off-site." *Doc. 14*, Exh. C. Defendant Vigil explained in her affidavit, "Upon receiving the Inmate Informal Complaint, I referred the matter to Kathy Armijo, the Health Services Administrator at GCCF. Ms. Armijo indicated that Plaintiff was scheduled to see the on-site dentist on May 18, 2009 or May 19, 2009. . . ." *Id.*, Exh. F. If Plaintiff were already

complaint form acknowledging that the complaint was resolved.  *Id.*

On May 17, 2009, Plaintiff filed another informal grievance repeating the same complaint as found in his May 7 informal grievance.  *Id.*, Exh. D.  Plaintiff explains that he filed this second informal complaint because he had received no response to his first informal request within the "required" five days.  *Doc. 1* at 4.[8]

On May 19, 2009, Plaintiff filed a formal grievance complaining that:

> I was already seen by the dentist back in Feb. who told me I had to go off-site for surgery.  Now I'm told I have to see the dentist again to see if I have to go off-site for surgery?  It's been well over 3 months!

*Id.*, Exh. C.  The grievance was returned to Plaintiff the same day by defendant Vigil with check marks next to "the grievance is not timely," and "other," adjacent to which was written: "Your date of incidents [sic] contradict your informal complaint."  *Id.*

In any event, this formal grievance was quickly mooted because the same date the grievance was filed, the on-site dentist, Dr. Romine, examined Mr. Carter again.  Notes from the consultation request indicate that Plaintiff sought extraction of two teeth (#5 and #15) and complained of pain when eating.  *Id.*, Exh. G.  Notably, the date of onset of this

_____

scheduled for the May 18th appointment at the time of his initial grievance, it would support Plaintiff's contention that he had filed a request for medical care sometime in early May and that medical request is missing from his file.  *See Doc.* 1 at 4; *Doc. 15* at 2, 6.

[8]   The second informal grievance was never officially marked as resolved or recommended for a formal grievance, but, on May 18th, a staff member signed the form with the note: "This issue has already been addressed in a previous informal grievance." *Doc. 14*, Exh. D.

pain is May 9, 2009.  *Id.*  Dr. Romine's objective findings included "gross decay," "roots in proximity to sinuses" and "#5 and 15 are non restorable."  *Id.*  Dr. Romine offered to extract tooth #5.  *Id.* at 7.  Mr. Carter, however, refused the proffered extraction.  *Id.*  When he refused the immediate extraction, he was advised and acknowledged "pain" and "swelling" were possible consequences of refusing the procedure.  *Id.*  That day, because Mr. Carter refused the immediate extraction of tooth #5, Mr. Carter was scheduled for an off-site surgery on June 30, 2009.  *Id.*[9]  The very next day, May 20, 2009, the warden, Defendant Bravo, approved transport for the off-site dental appointment.  *Id.*

While not mentioned in his Complaint, Mr. Carter claims in his Response that "[l]ater [in May] I wrote another letter to warden Bravo, this letter also was ignored."  *Doc. 15*, Exh. B.  Of course, by that time, Defendant Bravo had already approved Plaintiff's transport for the off-site dental surgery.

Despite the mooting of his formal grievance by Dr. Romine's second examination and the scheduling of the off-site surgery, on May 27, 2009, Plaintiff appealed the denial of his May 19 formal grievance.  *See Doc. 1* at 7; *Doc. 15* at 11.

Not waiting for a response to his appeal, Mr. Carter filed a federal complaint on June 5, 2009.  *Doc. 1.*  In his Complaint, Plaintiff claimed that he never received the surgery because the warden failed to schedule transport.  *Id.* at 5.

_____

[9]  It is unclear who had authority to schedule the off-site appointment or who actually did schedule the appointment.  *Id.*, Exh. G.

On June 29, 2009,[10] Mr. Carter wrote directly to Defendant Bravo stating the following:

> This is to inform you that no one is giving any attention to what's going on with my request for medical.   Neither your shift lieutenants or your grievance lieutenants have responded accordingly to my request.   The lieutenants should've scheduled me for an off-site surgery twice but never took me.  One of my informal grievances was never answered and they said my other grievance was untimely.   I appealed the grievance but haven't gotten an answer.  No one is following policy and they just continue to due [sic] worng by me because I use the grievance procedure accordingly.   I'm not sure if your subordinates have been trained properly because they don't follow any of the policy or procedures your [illegible] of."

Doc. 15, Exh. A

On June 30, 2009, as had been scheduled a month prior, Plaintiff was taken to an off-site specialist and provided the requested dental care as previously scheduled.  *Doc. 14*, Exhs. A, C, F.  The off-site dentist, Dr. Collins, extracted tooth #5 and tooth #15 "due to gross decay," and prescribed Plaintiff pain medication.  *Doc. 14*, Exh. G.

Plaintiff was released from custody on July 14, 2009.  *Id*., Exh. A, F.  On August 10, 2009, the New Mexico Corrections Department denied Plaintiff's appeal because the requested surgery had been administered in June and Mr. Carter was "given the appropriate medical and dental treatment for [his] condition."  *Id*., Exh. C.

---

[10] Plaintiff alleges that the warden received a notarized letter from Plaintiff on June 1st,  *Doc. 15* at 11, but he refers the Court to the letter dated June 29th, 2009.  *Id*., Exh. A. Due to Plaintiff's numerous other typographical errors in his dating of events, I interpret the correct date as the one provided on the letter itself.

Defendants have filed an Answer, a *Martinez* Report, and a Reply to Plaintiff's Response to the *Martinez Report*.  Collectively, those documents deny Plaintiff's allegations and raise several affirmative defenses, including failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).  *See Docs. 12, 14, 16*.  Plaintiff responded to the *Martinez* Report and provided additional exhibits.  *Doc. 15.*

For the reasons stated herein, I find that Plaintiff's Eighth Amendment claim is not subject to the defense of failure to exhaust, but fails to meet the standard for an Eighth Amendment violation.  Thus, I recommend that claim be dismissed with prejudice.  To the extent Plaintiff asserts retaliation claims, I recommend those claims be dismissed with prejudice, too, for failure to meet the standard.  Finally, to the extent Plaintiff asserts an equal protection claim, I recommend it be dismissed with prejudice for failure to state a claim.

## STANDARD OF REVIEW

I.    *Consideration of a Martinez Report*

In the *Martinez* Report (*Doc. 14*), Defendants seek dismissal of Mr. Carter's claims on summary judgment and assert the affirmative defense of failure to exhaust available administrative remedies based on materials submitted within the *Martinez* Report.   In the initial order directing submission of a *Martinez* Report (*Doc.  13*), the parties were also advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their

submissions could be used in deciding whether to grant summary judgment. Additionally, Mr. Carter, who is proceeding *pro se*, was afforded (and took) the opportunity to respond to the *Martinez* Report and to present conflicting evidence to controvert the facts set forth therein.

II.    *Summary Judgment*

Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Nonetheless, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.  *Hall v. Bellmon*, 935 F.2d at 1110. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits.  *Hall v. Bellmon*, 935 F.2d at 1111.

Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's

responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson*, 422 F.3d at 1187 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.   *Exhaustion of Remedies*

Under 42 U.S.C. §1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), a prison inmate is required to complete the prison's administrative process before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 733 (2001). "There is no question that exhaustion is mandatory under the PLRA," and that unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 199-200 (2007) (internal citation omitted). Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *See Booth v. Churner*, 532 U.S. at 740-741; *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).; *see also Jernigan*, 304 F.3d at 1032. An inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Jernigan*, 304 F.3d at 1032. He must also comply with the prison's procedural regulations when filing his administrative grievance

in order to have exhausted his claims. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Brooks v.*

*Johnson*, 307 F. App'x 247, 249 (10th Cir. 2009).

In a suit governed by the PLRA, "[f]ailure to exhaust is an affirmative defense; a

plaintiff is not required to plead or demonstrate exhaustion in the complaint." *Gallagher*

*v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009); *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus,

the defendant has the burden of proof regarding exhaustion of administrative remedies.

*Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendants must prove: (1)

administrative remedies were available to the plaintiff, and (2) the plaintiff failed to

exhaust those remedies. *Purkey v. CCA Detention Center*, 263 F. App'x 723, 726 (10th Cir.

2008).

IV.    *Affirmative Defense in Summary Judgment Posture*

When an affirmative defense is raised in a motion for summary judgment, the

defendant must demonstrate that "no disputed material fact exists regarding the

affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the

defendant meets this initial burden, the plaintiff must then demonstrate with specificity the

existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the

affirmative defense bars his claim, and the defendant is then entitled to summary judgment

as a matter of law." *Id.* "Material facts" are "facts which might affect the outcome of the

suit under the governing law." *Id.*

## ANALYSIS

*A.  Failure to Exhaust:*

Defendants argue that Mr. Carter failed at several points to follow GCCF's grievance procedure, thus rendering his claim "unexhausted" under *Woodford v. Ngo*, 548 U.S. 81 (2006).  Defendants make the following arguments in support of the claim that Mr. Carter failed to exhaust his administrative remedies:

(1)  Because Plaintiff signed his first informal grievance after it was returned to him as "resolved," he agreed that his complaint was resolved and should therefore be barred from bringing it in federal court.  *Doc. 14* at 6.

(2)  Plaintiff's formal grievance was defective because it did not have an attached unresolved informal grievance as required by prison grievance procedure.  *Id.*

(3)  Plaintiff's formal grievance was procedurally defective because it was untimely. Defendants point out that, although Plaintiff noted the "date of incident" as May 6, 2009, he also said in that grievance that it had been "well over three months" since he was promised surgery, and by prison regulation, Plaintiff only had twenty days in which to bring his claim from the date of incident.  *Id.* at 6-7.

(4)  Plaintiff's formal grievance was procedurally defective because the "date of incident" noted on the formal grievance did not match the "date of incident" noted on the informal grievance.  *Id.* at 7.

(5)  Plaintiff disregarded prison regulations when he filed an appeal that was

"specifically prohibited by the grievance policy." *Id.*

(6)  The appeal was denied by the warden, which bars federal review.[11]  *Id.*

(7)  Plaintiff jumped the gun and filed his federal complaint before he received a ruling on his appeal to the warden.  *Id.*

With respect to Defendants' exhaustion argument #1, whether Mr. Carter's initial informal grievance was "resolved" is a matter of disputed fact not justiciable on a motion for summary judgment.  Although Plaintiff signed his initial grievance apparently agreeing that the matter had been resolved, he also filed a formal grievance of the same issue the very next day.  This formal grievance and the various subsequent complaints made by Mr. Carter suggest that he may not have knowingly and voluntarily agreed that the informal complaint was resolved.  Any resolution of this issue would require a fact-finder.

With respect to Defendants' exhaustion arguments #2, #3, #4, and #5, they are defeated by the doctrine of waiver.[12]  Each of these arguments turn on some procedural

---

[11]  The *Martinez* Report included the following arguments: "Plaintiff 'filed an appeal to the Warden and to the Dept. of Corrections in Santa Fe.'  However, such an appeal is specifically prohibited by the grievance policy.  Moreover, the 'appeal' was denied by the Deputy Secretary of the New Mexico Corrections Department on August 10, 2009.  Plaintiff filed this lawsuit on June 5, 2009, more than two months before he received a response to his appeal." *Doc. 14* at 7 (emphasis and internal citation omitted).  The state may not have intended to make the argument that because the warden denied the appeal, the Court should dismiss the case.  In an effort to be exhaustive, however, the Court has construed Defendants' filing to include such an argument.

[12]  For that matter, Defendants' exhaustion argument #1 would fail for this reason as well.

defect in the manner in which Mr. Carter pursued his complaint through the prison's grievance process.  It is undisputed that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'--rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007)(*quoting Woodford*, 548 U.S. 81, 88 (2006)) (citation omitted).  The consequences of procedural error are as follows:

> [C]laims that have been properly denied by the prison as untimely are, practically speaking, procedurally defaulted, and. . . . a claim that has been properly rejected by the prison grievance system on procedural grounds should be dismissed from the plaintiff's complaint with prejudice.  Although "[a] dismissal based on lack of exhaustion ... should ordinarily be without prejudice," this is because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw."  *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212-13 (10th Cir. 2003).  Once a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer "a temporary, curable, procedural flaw."  Such a claim should be dismissed with prejudice.

*Kikumura v. Osagie*  461 F.3d 1269, 1289-90 (10th Cir. 2006)(abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008)); *see also Van Houten v. Marlett*, 330 F. App'x 161, 162 (10th Cir. 2009).

Dismissal is not triggered, however, if a prison waives a plaintiff's procedural flaws by deciding the complaint on the merits.  "If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."  *Ross v. County of Bernalillo*,

365 F.3d 1181, 1186 (10th Cir. 2004)(overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (U.S. 2007))(citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)); *see also Cannon v. Mason*, 340 F. App'x 495, 497-98 (10th Cir. 2009).   In the instant case, the Department denied Plaintiff's appeal with the explanation that: "On June 30, 2009 [Plaintiff was] taken to an off-site specialist that provided the appropriate health care. . . . [His] claim that [his] dental problems are not being resolved is unsubstantiated and unfounded." *Doc. 14*, Exh. C.  Therefore, the Department did not deny the grievance for any of the procedural errors now alleged, but instead denied Plaintiff's claim on its merits.  Thus I find that the defendants have waived any procedural flaws in Mr. Carter's complaints which might support an affirmative defense of failure to exhaust.

Even if Defendants had not waived the procedural error claimed in exhaustion argument #3, the argument that Mr. Carter's grievance was untimely would fail on its merits.  Under GCCF's policy, formal grievances are to be filed "within 20 calendar days of the date of the complaint." *Doc. 14*, Exh. E.  Defendants apparently ask the Court to construe the date of the complaint as the date Plaintiff was initially told his off-site surgery was being scheduled.  Plaintiff's complaint, however, involves an omission rather than an action, and there is no bright line date on which the Court can say the wrong occurred.  Two to three months of waiting for transport orders before realizing the surgery had not been ordered as promised does not strike the Court as a patently unreasonable amount of time to wait for the institutional wheels to turn before seeking redress.

Defendants' exhaustion argument #5 is similarly unpersuasive on its merits.  In this argument, Defendants claim that Mr. Carter failed to properly exhaust his administrative remedies by filing an appeal prohibited by the prison grievance policies.  "[E]xhaustion requirements are designed . . . to give the agency a fair and full opportunity to adjudicate their claims."  *Woodford v. Ngo*,  548 U.S. 81, 90 (2006)  "Exhaustion. . . requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  *Hernandez v. Coffey*, 582 F.3d 303, 305 (2nd Cir. 2009)(quoting *Woodford*, 548 U.S. 81, 90 (2006)).  Here, Defendants are not contending that Plaintiff failed to use "all steps" that it held out, but rather that Plaintiff took a step that wasn't given to him.  Defendants contend that, because prison policy disallows an appeal to the warden for grievances such as Plaintiff's, the mere fact that Mr. Carter submitted an appeal anyway is enough to bar federal consideration of his claims.  Even if the Department *hadn't* later decided the appeal on the merits despite the apparent prohibition against appeal, Defendants have put forward no reason justifying such an expansion of the *Woodford* doctrine.

Defendants' exhaustion argument #7 is the inverse of argument #5 and equally unpersuasive.  In argument #5, Defendants state that Plaintiff's appeal of his formal grievance was disallowed by prison policy.  In argument #7, Defendants argue that Plaintiff's claims were unexhausted because Plaintiff failed to await an answer to his appeal before filing his federal complaint.  Admittedly, the Tenth Circuit has held that

exhaustion is not complete if a plaintiff submitted his last appeal but failed to await the response before filing his federal complaint. *Price v. Shinn*, 178 F. App'x 803, 805 (10th Cir. 2006). Moreover, receipt of the internal appeals decision during litigation of the federal claim does not cure the failure to exhaust, and the appropriate remedy is dismissal without prejudice. *Id.* The Tenth Circuit has acknowledged that this rule may result in extra costs to the parties and judicial inefficiency, but notes that it was a policy judgment made by Congress. *See e.g. Fitzgerald v. Corrections Corp. Of America*, 403 F.3d 1134, 1141 (10th Cir. 2005). However, this result only follows if Plaintiff's appeal was an "available" administrative remedy. *See* 42 U.S.C.A. § 1997e(a). As acknowledged, indeed argued, by Defendants in their fifth contention, Plaintiff's appeal was "specifically prohibited by the grievance policy." *Doc. 14* at 7.[13] As such, Plaintiff's appeal was not an "available" administrative remedy that he was required to exhaust prior to filing his federal complaint. *See DeYonghe v. Ward*, 121 F. App'x 335, 338-39 (10th Cir. 2005). Mr. Carter's failure to await the Department's response before filing in federal court, therefore, did not run afoul of the PLRA's exhaustion requirement.

Defendants' exhaustion argument #6 is legally incorrect. A Plaintiff is barred from

---

[13] It is not readily apparent to the Court why Plaintiff's appeal was "specifically prohibited by the grievance policy." Defendants fail to cite to the provision which would have prohibited the appeal. The Court could construct an argument based upon their regulations at CD-150500 § D(2)(f) and § D(3), but, for the purposes of Defendants' argument, the court will accept Defendants' representation that the appeal was prohibited by its grievance policy. *See Doc. 14*, Exh. E.

bringing federal suit when his claim was properly denied by the prison on **procedural grounds**.  *Kikumura v. Osagie*  461 F.3d 1269, 1289-90 (10th Cir. 2006)(abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008))(emphasis added); *see also Van Houten v. Marlett*, 330 F. App'x 161, 162 (10th Cir. 2009).  The Department denied Plaintiff's appeal on the merits of his claim, and, thus, the procedural bar does not attach.

Because I find no merit in the several grounds asserted for a failure to exhaust affirmative defense, I recommend the Court address the merits of Plaintiff's claim.

B.  *Eighth Amendment Violation Due to Delayed Medical Care:*

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious.  Second, a prison official must have a sufficiently culpable state of mind. . . . To be held liable under § 1983 for deliberate indifference, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Johnson v. Mullin*,  422 F.3d 1184, 1186 (10th Cir. 2005) (citations and quotations omitted).

     i.     Requirement One - Objectively, Sufficiently Serious

The Tenth Circuit has noted that "dental care is one of the most important medical needs of inmates," *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980), and "[a] delay in

medical care is an Eighth Amendment violation when plaintiff can show that it resulted in substantial harm, *Oxendine v. Kaplan*, 241 F.3 d 1272, 1276 (10th Cir.2001), such as lifelong handicap, permanent loss or considerable pain." *Hauschulz v. Bourbon County Bd. of Com'rs*, 2006 WL 1675907, 6 (D. Kan. 2006)(citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir.2001)); *see also Fleming v. Uphoff*, 210 F.3d 389 (10th Cir. 2000).

Plaintiff has claimed significant pain during the nearly six months that elapsed between the time he first requested extraction of the teeth (January 5, 2009), and the time they were finally extracted (June 30, 2009). *See Doc*. 14, Exh. A, C, F, G.  He was allegedly promised surgical removal of those teeth on February 17, 2009. *See Doc. 1* at 4.  Counting from that date, Plaintiff waited more than four months for his treatment.[14]  Such a delay in treating a dental problem while the prisoner is suffering significant pain is sufficient to create a material dispute of fact regarding whether the deprivation was objectively, sufficiently serious.   *See Stack v. McCotter*, 79 F. App'x 383, 389 (10th Cir. 2003) (seven-month delay between initial complaint about dental problems and treatment created issue whether plaintiff met "sufficiently serious" criteria); *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995) (three-week delay in dental care for impacted/infected wisdom tooth can support

---

[14]  It must be noted here that, at the May 19, 2009 appointment with the on-site dentist, Plaintiff was offered, but refused, extraction of tooth #5. *See Doc. 14*, Exh. G.  So, as to tooth #5, Plaintiff only waited four and one half months between his initial request for extraction and when the extraction was offered, and three months between when the surgery was allegedly promised and when it was offered.

finding of Eighth Amendment violation); *Hauschulz v. Bourbon County Bd. of Com'rs*, 2006

WL 1675907, *7 (D. Kan. 2006) (where a Plaintiff has made repeated complaints of pain, a

"six-week delay creates a genuine issue of material fact whether defendants violated the

Eighth Amendment by delaying dental treatment"); *Archer v. Florence*, 2005 WL 3336512

(W.D.Okla. Dec. 7, 2005) (six-month delay in treating cavity when plaintiff suffered severe

pain raised genuine issue of material fact).  Therefore, summary judgment would be proper

only if Plaintiff has failed to raise a genuine issue of material fact regarding Defendants'

state of mind.

     ii.    Requirement Two - Sufficiently Culpable State of Mind

The Tenth Circuit recently set out the standard for the subjective prong of the

deliberate indifference test as follows:

> To prevail on the subjective component, the prisoner must show that the
> defendants knew he faced a substantial risk of harm and disregarded that
> risk, by failing to take reasonable measures to abate it.  [A] prison official
> cannot be found liable under the Eighth Amendment for denying an inmate
> humane conditions of confinement unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official must both
> be aware of facts from which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw the inference.  Unlike the
> objective component, the symptoms displayed by the prisoner are relevant
> to the subjective component of deliberate indifference. The question is: "were
> the symptoms such that a prison employee knew the risk to the prisoner and
> chose (recklessly) to disregard it?"

*Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009)(internal citations omitted).

Because this standard requires analysis of facts specific to each defendant, I have

performed the subjective prong analysis separately for Defendant Vigil and Defendant Bravo.

   1. *Defendant Vigil*:

As a preliminary matter, I must address new factual allegations against Defendant Vigil which are raised in Plaintiff's Response to the *Martinez* Report. In the Complaint, Plaintiff alleges that his medical records were incomplete because a medical request he had made in May was missing from his file. *Doc. 1* at 4. In that pleading, he did not accuse Defendant Vigil of wrongdoing. Instead, he argued that *the medical department* "either lost, chose not to place, or removed certain medical request from the Plaintiff which showed the extent of his pain." *Id.* (emphasis added).

In his Response to the *Martinez* Report, however, Plaintiff dramatically magnified his allegations against Defendant Vigil. He alleged that Defendant Vigil "personally went to the medical office[,] removed the Plaintiffs [sic] request and instructed the administrator to reschedule the Plaintiff for another date, which wouldn't take place for another 10 days." *Doc. 16* at 6. Plaintiff also alleges in his Response that Defendant Vigil failed to log or forward his May 20th appeal onto the warden. *Id.* He claims that she did these things[15] due to her "obvious contempt" for

---

[15] Plaintiff also asserts in his Response that Defendant Vigil lied about the Plaintiff to others and discussed the details of Plaintiff's grievances with unauthorized people. *Doc.*

him and her hope that he would be released before he could obtain relief.  *Doc. 16* at 5-6.

"[I]t might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).  That view has been endorsed where the new facts neither rule out nor contradict those facts expressed in the complaint.  *See Carson v. Cudd Pressure Control, Inc.*,  299 F. App'x 845, 848 (10th Cir. 2008).  Here, however, Plaintiff changes the person or group who removed the medical request from "the medical department" to the grievance officer, Defendant Vigil.  Furthermore, he changes his allegation of intent from possibly inadvertent to deliberate and intentional removal.  Because I find that the new allegations contradict the facts Plaintiff swore to in the Complaint, I will not consider upon them in my analysis.

There is another reason I will not consider Plaintiff's new allegations.  At no point does Mr. Carter explain how he knew these, if true, incriminating facts.  A "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."  *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991).  The *Hall* court was

---

*16* at 5.

relying on a Seventh Circuit opinion that itself said, "A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." *Palucki v. Sears, Roebuck & Co.*,   879 F.2d 1568, 1572 (7th Cir. 1989)(holding there was no dispute of material fact where the non-moving party's contrary version of facts was based merely on a "gut feeling").  The Court can conceive of no way Plaintiff could have "personal knowledge" of the facts he alleges in his Response, nor can it understand why, if Plaintiff did know those facts, his Complaint cast the relevant events in such a mild light.  This lack of "personal knowledge" serves as a second reason for me not to consider Plaintiff's new allegations when I conduct my summary judgment analysis.

Viewing the evidence in the light most favorable to the Plaintiff, the pleadings reflect the following facts relevant to Defendant Vigil's state of mind:

(1)   Mr. Carter has made no allegation and presented no evidence that Defendant Vigil was aware of Mr.Carter's dental pain prior to receiving Mr. Carter's May 8th informal complaint.

(2)   Mr. Carter filed his first informal complaint on May 8, 2009 stating:

> On 2-17-09 I was seen by the Dentist who had to schedule an off-site surgery.  It's been almost 3 months later and my teeth have gotten worse. I know I can't be informed on security issues but this is causing infection to spread and the pain has only gotten worse. I thought it would've been taken care of by now so I haven't complained.

*Doc. 14*, Exh. C.

24

(3)     Mr. Carter did not designate his May 8th informal complaint as an emergency.[16]

(4)     If Defendant Vigil had reviewed Plaintiff's medical records on May 8, 2009, the records would have reflected that the dentist had evaluated Plaintiff on February 17th and observed that "nothing hurts."  The records would not have reflected the scheduling of any surgery, on or off-site.  Doc. 14, Exh. G.

(5)     On May 8, 2009, Defendant Vigil knew that Mr. Carter was scheduled to be evaluated by the on-site dentist in eleven days (May 19, 2009).

(6)     Defendant Vigil marked the informal complaint as "resolved" and returned the form to Mr. Carter.  On May 15, 2009, Mr. Carter signed the form acknowledging

---

[16]   Under the GCCF grievance policy, a prisoner may designate a grievance as an "emergency grievance."  *Doc. 16* at 6; *Doc. 14,* Exh. E at 7.  In pertinent part, the policy states:

> 1.     An emergency grievance shall be given priority.  It is the responsibility of the inmate to designate the grievance as an emergency on the Inmate Grievance Form *(CD-150501.1)* and to demonstrate the factors creating a risk that serious harm may result if the emergency grievance is processed according to standard time limits.
>
> 2.     It is the responsibility of the Grievance Officer to determine, through investigation, if the inmate's grievance is, in fact, an emergency grievance.
>
> 3.     Once it is determined that such factors exist, the grievance will be deemed an emergency grievance and it shall be forwarded without substantive review immediately to the Warden or to an official at a level capable of correcting the situation.  Emergency grievances may be immediately appealed to the Administrator.

*Id*.

that "[t]his informal complaint has been resolved."

(7)    On May 17, 2009, Mr. Carter filed his second informal complaint stating:

> I've been in pain for 2 months.  I was scheduled to go have surgery 3
> months ago.  I thought it would take a week or 2 so I haven't
> complained.  But my pain is bad it's been 3 months.

*Doc. 14*, Exh. D.

(8)    Mr. Carter did not designate his May 17th informal complaint as an

emergency.

(9)    On May 18, 2009, Defendant Vigil reviewed Mr Carter's new complaint, but,

still knowing that Mr. Carter was scheduled to see the on-site dentist the next day,

rejected the complaint because "this issue has already been addressed in a previous

informal grievance."  *Id.*

(10)    On May 19, 2009, Mr. Carter filed a formal grievance complaining that:

> I was already seen by the dentist back in Feb. who told me I had to go off-site
> for surgery.  Now I'm told I have to see the dentist again to see if I have to go
> off-site for surgery?  It's been well over 3 months!

*Id.*, Exh. C.  This grievance was also not designated as an emergency.  In fact, Mr. Carter's

complaint in this grievance is not focused on his pain, but instead on being required to be

reevaluated by the on-site dentist.  Mr. Carter requested the following relief: "I want the

security who was supposed to schedule my med-transport, last time, to schedule it this

time and not continue to give me the run-around."  Id.

(11)    The same day the formal grievance was received, Defendant Vigil rejected the

grievance.

(12)    Also that same day, Mr. Carter was examined by the on-site dentist.  If Defendant

Vigil had reviewed Plaintiff's medical records from that appointment, she would been

aware that Mr. Carter refused the extraction of one of his two problematic teeth.  Defendant

Vigil would also have known that Mr. Carter had been scheduled for an off-site surgery

in June.

(13)    Mr. Carter does not allege, nor does the record support, that Defendant Vigil was

responsible for scheduling the off-site surgery.

These facts simply do not demonstrate Defendant Vigil was deliberately indifferent

to Mr. Carter's dental complaints.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(noting that

deliberate indifference requires a *mens rea* more culpable than negligence).  Defendant Vigil

had nothing to do with the alleged failure to schedule the off-site surgery in February 2009.

She was completely unaware of any of Mr. Carter's dental problems until May 8, 2009.

Therefore, none of the alleged delay between February 17 and May 8 can be attributed to

her.  Within eleven days of receiving Mr. Carter's May 8th complaint of dental problems,

Defendant Vigil ensured that Mr. Carter was seen by the on-site dentist.  Nothing in Mr.

Carter's grievances demonstrated an emergency such that an eleven day delay would

demonstrate deliberate indifference to a  substantial risk of serious harm.  *See Johnson v.*

*Mullin*, 422 F.3d 1184, 1186-87 (10th Cir. 2005) (in case involving 40-day delay in dental

treatment, summary judgment for defendants required because they "were never informed

that plaintiff's situation constituted an emergency, and thus they were not 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.")

Of course, Plaintiff's complaint hinges in part on the fact that, after he saw the on-site dentist again, he still had to wait another forty days before getting his off-site surgery. This delay was unfortunate, but Plaintiff has not alleged, and the evidence does not suggest, that Defendant Vigil had any control over when the off-site surgery was scheduled.[17] Moreover, even if Defendant Vigil had some control over the scheduling date, the surrounding circumstances would not have indicated to Defendant Vigil that Mr. Carter faced a substantial risk of serious harm by virtue of the 40-day delay. First, Mr. Carter did not designate any of his grievances as emergency grievances. *See Johnson*, 422 F.3d at 1186-87. Second, the text of Mr. Carter's complaints do not communicate a medical emergency. Instead, Mr. Carter's grievances reveal an inmate frustrated by the delays rather than an inmate in extraordinary pain. Third, Defendant Vigil should be able to rely on the fact that Mr. Carter was evaluated twice by the on-site dentist who apparently did not consider Mr. Carter's issues an emergency. Finally, Mr. Carter himself refused immediate extraction of one of his troublesome teeth on May 19, 2009. *See Doc. 14*, Exh. G (Mr. Carter was offered extraction of tooth #5 on May 19, 2009 by Dr. Romine). These facts demonstrate that Defendant Vigil was not deliberately indifferent to a substantial risk of

---

[17] *See supra* note 9.

serious harm as a result of the forty day wait for the extraction surgery.

Defendant Vigil has carried her burden of proving that there are no genuine issues of material fact with regard to whether she possessed a sufficiently culpable state of mind. Because Mr. Carter cannot prove this required element, I recommend dismissal of the Eighth Amendment claims against Defendant Vigil.

2. *Defendant Bravo*:

Viewing the evidence in the light most favorable to the Plaintiff, the pleadings reflect the following facts relevant to Defendant Bravo's state of mind:

(1)     Mr. Carter has made no allegation and presented no evidence that Defendant Bravo was aware of Mr. Carter's dental pain prior to Mr. Carter's letter to him in early May.[18]  In that letter, Mr. Carter "request[ed] that something be done so that [he could] receive [his] prescribed dental surgery."  *Doc. 15*, Exh. B.

(2)     As of the date of the letter to Defendant Bravo, Plaintiff had filed only one informal complaint about dental problems.  That complaint, filed on May 8, 2009, stated:

> On 2-17-09 I was seen by the Dentist who had to schedule an off-site surgery. It's been almost 3 months later and my teeth have gotten worse. I know I can't be informed on security issues but this is causing infection to spread and the pain has only gotten worse. I thought it would've been taken care of

---

[18]     The Complaint can be construed as alleging that Defendant Bravo had constructive knowledge of Mr. Carter's grievances because Defendant Bravo was responsible for supervising the grievance system.  Even assuming such constructive knowledge, Defendant Bravo would have first been aware of Mr. Carter's complaint on May 8, 2010.

by now so I haven't complained.

*Doc. 14*, Exh. C.

(3)     Mr. Carter did not designate his May 8th informal complaint as an emergency.

(4)     As of the date of the letter to Defendant Bravo, Plaintiff's medical records would have reflected that the dentist had evaluated Plaintiff on February 17th and observed that "Nothing hurts."  The records would not have reflected the scheduling of any surgery, on or off-site.  Doc. 14, Exh. G.

(5)     Mr. Carter was scheduled to be evaluated by the on-site dentist on May 19, 2009.

(6)     Mr. Carter filed a second informal grievance on May 17, 2009 and a formal grievance on May 19, 2009.  He did not designate either as an emergency.

(7)     At the May 19th dental evaluation, Mr. Carter refused to allow Dr. Romine, the on-site dentist, to extract one of the two problematic teeth.

(8)     After the May 19th evaluation, Dr. Romine filed a "Consultation Request" seeking extraction of Mr. Carter's #5 and #15 teeth by an off-site dentist.

(9)     The next day, on May 20, 2009, Defendant Bravo approved Mr. Carter's transport for off-site dental surgery scheduled for June 30, 2009.

(10)     In late May, Mr. Carter "wrote another letter to warden Bravo."  Doc. 15, Exh. B. Though Mr. Carter does not describe its contents, the Court presumes he again complained about not yet receiving his dental surgery.

(11)     Mr. Carter does not allege, nor does the record support, that Defendant Bravo was

responsible for scheduling the off-site surgery.

(12)     On June 29, 2009, Mr. Carter again wrote directly to Defendant Bravo complaining about the manner in which his grievances were being handled.  Nowhere in the letter does Mr. Carter alert Defendant Bravo to his need for emergency medical treatment.  *Doc. 15*, Exh. A; *see infra* pp. 7-8.

(13)     On June 30, 2009, Mr. Carter was transported to the off-site dentist who extracted his #5 and #15 teeth.

These facts simply do not demonstrate Defendant Bravo was deliberately indifferent to Mr. Carter's dental complaints.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(noting that deliberate indifference requires a *mens rea* more culpable than negligence).  Defendant Bravo had nothing to do with the alleged failure to schedule the off-site surgery in February 2009.  He was completely unaware of any of Mr. Carter's dental problems until early May 2009.  Therefore, none of the alleged delay between February 17 and early May can be attributed to him.  Approximately ten days after Defendant Bravo received the first letter from Mr. Carter, Mr. Carter was seen by the on-site dentist.  Nothing in Mr. Carter's letter or grievances demonstrated some emergency so acute that a ten-day delay would demonstrate deliberate indifference to a  substantial risk of serious harm.  *See Johnson*, 422 F.3d at 1186-87.

Of course, Plaintiff's complaint hinges in part on the fact that, after he saw the on-site dentist again, he still had to wait another forty days before getting his off-site surgery.

This delay was unfortunate, but Plaintiff has not alleged, and the evidence does not suggest, that Defendant Bravo had any control over when the off-site surgery was scheduled.[19]  Moreover, even if Defendant Bravo had some control over the scheduling date, the surrounding circumstances would not have indicated to him that Mr. Carter faced a substantial risk of serious harm by virtue of the 40-day delay.  First, Mr. Carter did not designate any of his grievances as emergency grievances.  *See Johnson*, 422 F.3d at 1186-87. Second, the text of Mr. Carter's complaints do not communicate a medical emergency. Instead, Mr. Carter's grievances reveal an inmate frustrated by the delays rather than an inmate in extraordinary pain.  This focus is even apparent in Mr. Carter's June 29th letter to Defendant Bravo where Mr. Carter complains of failures of the grievance policy but never complains about any dental pain whatsoever.  *See Doc. 15*, Exh. A.  Third, Defendant Bravo should be able to rely on the fact that Mr. Carter was twice evaluated by the on-site dentist who apparently did not consider Mr. Carter's issues an emergency.  Finally, Mr. Carter himself refused immediate extraction of one of his troublesome teeth on May 19, 2009.  *See Doc. 14*, Exh. G (Mr. Carter was offered extraction of tooth #5 on May 19, 2009 by Dr. Romine).   These facts demonstrate that Defendant Bravo was not deliberately indifferent to a substantial risk of serious harm as a result of the forty day wait for the

---

[19] *See supra* note 9.  Although the warden is responsible for authorizing transport for an off-site appointment, Plaintiff does not allege, and there is nothing in the record to suggest, that the warden had any control over when the off-site dentist was available to perform a surgery.

extraction surgery.

Defendant Bravo has carried his burden of proving that there are no genuine issues of material fact with regard to whether he possessed a sufficiently culpable state of mind. Because Mr. Carter cannot prove this required element, I recommend dismissal of the Eighth Amendment claims against Defendant Bravo.

## C. Plaintiff's Retaliation Claim

At a couple of points in his Complaint, Plaintiff asserts that the Defendants' delay in providing treatment was "possibly due to retaliation" against him for using the grievance process. *See Doc. 1* at 2, 5.   Plaintiff alleges a retaliation claim with more conviction in his Response, though only as to Defendant Vigil.   There, he alleges, "Defendant Jessica Vigil. . . broke the administrative grievance policy deliberate to further ignore or delay the Plaintiffs need for medical attention, in retaliation to the Plaintiff exercising his right to redress this and other complaints at GCCF."  *Doc. 15* at 1.  He also states: "The persistent and success of the Plaintiff in his grievances is why Lt. Vigil retaliated against the Plaintiff when he presented a request for serious medical attention for his ongoing pain." *Id*. at 5.  Later, he reiterates that his medical requests were "removed from his file due to retaliation by J. Vigil."  *Id.* at 9.

Because the allegations in the Reply depart from those put forward in the Complaint, it is arguable that they ought not be considered.  *See e.g. Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).  However, even acknowledging Plaintiff's additional

allegations, it is clear he has not met his burden to survive a summary judgment motion on a retaliation claim against either Defendant.

The Tenth Circuit has held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "[I]t is not the role of the federal judiciary," however, "to scrutinize and interfere with the daily operations of a state prison, and . . . an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Filing an administrative grievance in the prison context is a constitutionally protected right. *See Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006). In order to make a retaliation claim, "a plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place," and "[a]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (10th Cir. 1998)(internal citations omitted).

Plaintiff has plead no facts to support a retaliation claim against Defendant Bravo. Thus, Mr. Carter's retaliation claim against Defendant Bravo must fail.

Plaintiff has alleged some retaliatory facts as to Defendant Vigil, but they are so vague and conclusory that they cannot be used to substantiate a claim against her. Construing Plaintiff's allegations liberally, his claim appears to be that Defendant Vigil

34

(1) removed a medical request from his file, and (2) took more than five calendar days to address his first informal grievance, and (3) that she did these things specifically in order to delay his access to dental care because she was irked by Plaintiff's successful use (current and past) of the grievance procedure.  As discussed earlier, Plaintiff has no basis for his allegation that Defendant Vigil removed his request.  Indeed, in his Complaint, Plaintiff indicates that he does not know what happened to the request and blames the medical department for its removal or displacement.  *See Doc.* 1 at 4.  Allegations of retaliation that are based on "mere speculation rather than evidence" do not demonstrate a material issue of fact.  *See Peterson*, 149 F.3d at 1144.  As to Plaintiff's claim that Defendant Vigil was dilatory in responding to his first informal grievance, the evidence demonstrates that the informal complaint was reviewed three business days after it was received, and it was returned to Plaintiff six business days after the date received.  *See Doc. 14*, Exh. C. Even if this were a cognizable retaliatory action, he has produced no evidence to suggest that a retaliatory motive was the "but for" cause of her delay.  Moreover, this claim fails for the same reasons that Mr. Carter cannot prove Defendant Vigil's deliberate indifference to his medical problems.  Because Mr. Carter has not shown that there is a material issue of fact as to either Defendants' alleged retaliation, I recommend dismissal of these claims.

D.  *Plaintiff's Fourteenth Amendment Claim*

In his complaint, Plaintiff includes a one sentence conclusory allegation that the Defendants violated Plaintiff's equal protection rights.  *Doc. 1* at 3.  He did not present any

basis for such a claim.  Indeed, his entire complaint centered on his untreated dental needs, and he did not assert that his delayed treatment was due to his status as a member of any particular group.  In the *Martinez* Report, Defendants argued that Plaintiff's Fourteenth Amendment claim was not cognizable.  *Doc. 14* at 7-8.  As noted in their Reply brief, Plaintiff did not address their arguments in his Response, and Defendants request the Court find that he has conceded that his claim lacks merit.  *Doc. 16* at 4.  I recommend dismissing Plaintiff's Fourteenth Amendment claim due to his apparent abandonment of the issue and failure to state a claim.

*E.  Plaintiff's Motion for Summary Judgment*

In his Response to the Martinez Report, Plaintiff asked that it be construed as a motion for summary judgment as to his claims against Defendant Vigil.  *See Doc. 15* at 16. As explained above, even when construing all facts in favor of Mr. Carter, he has not made a showing of subjective deliberate indifference as to Defendant Vigil.  Moreover, there is a material issue of fact as to whether the events at issue met the standard for objective, deliberate indifference.  Summary judgment in his favor is, thus, doubly inappropriate.  I therefore deny his request that his Response be construed as a Motion for Summary Judgment.

## CONCLUSION

Thus, summary judgment should be granted on the ground that there are no genuine issues of material fact on the issues of (1) whether Defendants acted with

deliberate indifference to a substantial risk of serious harm and (2) whether the Defendants acted with a retaliatory motive in dealing with his grievances. Because, even construing the facts in favor of Mr. Carter, he cannot prove these elements that are essential to his claims, Defendants are entitled to summary judgment.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendants' *Martinez* Report (*Doc. 14*) be treated as a motion for summary judgment and be **GRANTED,** and Plaintiff's Eighth Amendment claims and retaliation claims against both remaining Defendants be **DISMISSED WITH PREJUDICE**. To the extent Plaintiff makes any equal protection claim, it is recommended that it should be **DISMISSED WITH PREJUDICE**. Finally, Plaintiff's request to have his Response to the *Martinez* Report construed as a motion for summary judgment as to his claims against Defendant Vigil, *See Doc. 15* at 16, is **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE